IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DEBRA LYNN WILSON                                                                   PLAINTIFF

v.                                   No. 3:15-CV-243-JLH-JJV

CAROLYN W. COLVIN,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION                                       DEFENDANT

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge J. Leon Holmes. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Debra Lynn Wilson seeks judicial review of the denial of her second application for disability insurance benefits (DIB).[3] Ms. Wilson worked at a school cafeteria as a cook's helper for many years.[4] She quit her job in May 2012. Her reasons for leaving her job vary.[5] She initially claimed she was disabled when she quit her job, but she later amended her claim to allege disability beginning the day after denial of the first application.[6] Ms. Wilson based disability on depression, neuropathy in the feet, sleep apnea, right hip pain, and left shoulder pain.[7]

**The Commissioner's decision**. This case covers the time from November 6, 2012 to April 13, 2015 – the day of the unfavorable decision.[8] The ALJ identified depression and anxiety as severe impairments.[9] The ALJ determined Ms. Wilson can work at all exertional

---

[3]SSA record at p. 194 (applying on October 10, 2013, and alleging disability beginning May 19, 2012). *See id*. at p. 229 (indicating first application was denied on Nov. 5, 2012).

[4]*Id*. at pp. 234 & 240.

[5]*Id*. at pp. 58-59 (testifying that she quit because she started to have panic attacks), p. 233 (stopped working due to my condition), p. 323 (she quit to take care of her ill father) & p. 338 (she reported that she stopped working due to depression and panic attacks).

[6]*Id*. at p. 34.

[7]*Id*. at p. 233.

[8]The unfavorable decision states an incorrect time period — one beginning with the original onset date — but the mistake has no bearing on the result.

[9]*Id*. at p. 14.

levels with nonexertional limits.[10] After consulting with a vocational expert, the ALJ determined Ms. Wilson can do her former work as a cook's helper.[11] Because a person who can do her past work is not disabled under social security law,[12] the ALJ concluded Ms. Wilson is not disabled and denied the application.[13]

After the Appeals Council denied review,[14] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[15] Ms. Wilson filed this case to challenge the decision.[16] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Ms. Wilson's allegations**. Ms. Wilson contends the ALJ erred by failing to consider her ability to ambulate effectively. She maintains treating-medical-provider opinions deserved more weight. For these reasons, she says substantial evidence does not support

---

[10]*Id*. at p. 16.

[11]*Id*. at p. 21.

[12]20 C.F.R. § 404.1520(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[13]SSA record at p. 22.

[14]*Id*. at p. 1.

[15]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[16]Docket entry # 1.

the decision.[17]

**Applicable legal principles**. When reviewing a decision denying an application for DIB, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[18] For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the ALJ's decision. The ALJ determined anxiety and depression limit Ms. Wilson to work involving: (1) tasks learned and performed by rote, with few variables, (2) little required judgment, (3) incidental interpersonal contact, and (4) simple, direct, concrete supervision.[19] The court must determine whether a reasonable mind will accept the evidence as adequate to show Ms. Wilson can work within these parameters. A reasonable mind will accept the evidence as adequate for the following reasons:

**1. The evidence establishes no severe physical impairment**. Ms. Wilson based her claim, in part, on physical impairment: sleep apnea, right hip pain, left shoulder pain, and

---

[17]Docket entry # 11.

[18]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[19]SSA record at p. 16.

neuropathy in the feet.[20] She had to establish physical impairment by medical evidence; her allegations were not enough.[21] Ms. Wilson did not establish physical impairment because: (1) there is no evidence of sleep apnea or problems with the left shoulder, (2) diagnostic imaging of the right hip was negative,[22] and (3) no treating medical provider diagnosed neuropathy.[23]

On judicial review, Ms. Wilson claims neuropathy in the feet, plantar fasciitis, left-foot arthritis, and a remote right-foot surgery prevent her from ambulating effectively, but the evidence doesn't support the claim.

To ambulate effectively, individuals must be capable of sustaining a

---

[20]*Id.* at p. 233.

[21]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[22]SSA record at p. 344.

[23]The agency physical examiner diagnosed neuropathy, but the diagnosis flowed from Ms. Wilson's report. *Id.* at p. 342.

> reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. [E]xamples of ineffective ambulation include … the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Pt. 404, Subpt. P, App. 1. No evidence suggests Ms. Wilson needs a walker, crutch, or cane to walk, or that she can not walk a block at a reasonable pace on rough or uneven surfaces, or that she can not carry out activities of daily living. Moreover, Ms. Wilson identified anxiety and depression as her primary reasons for being unable to work.[24] She rarely complained about her feet.[25] She worked on her feet for several months during the time period for which benefits were denied.[26] Under these circumstances, there was no need to consider an inability to ambulate effectively.

**2. Treating-provider medical statements are unsupported**. At the hearing, Ms. Wilson presented two treating provider opinions: one from a treating advanced practice

---

[24]*Id*. at pp. 46 & 342.

[25]*Id*. at p. 310 (Sept. 1, 2012, foot pain is worse upon awakening and after a long walk) & p. 383 (Aug. 15, 2014, she complained about her feet burning and hurting on the soles).

[26]*Id*. at p. 290 (Dec. 16, 2014, working 20 hours/week at Dollar General as cashier in May 2012) & pp. 36-39 (Jan. 23, 2015, testifying that she worked at Dollar General from August to December 2014, sometimes working 40 hours/week, mostly at the cash register, but also doing some stocking.

nurse (APN),[27] and the other from a psychiatrist.[28] Both statements reported disabling limitations. The ALJ gave the statements little weight. Ms. Wilson claims the ALJ should have given the statements controlling weight.

The Commissioner's rules instruct the ALJ to give a treating-physician medical opinion controlling weight if it is well-supported and consistent with the other substantial evidence.[29] Treating-physician opinions are entitled to special weight, but they do not automatically control because the record must be evaluated as a whole.[30]

The ALJ properly rejected the APN statement because: (1) an APN is not an acceptable medical source under the regulations,[31] and (2) the APN statement is inconsistent with the record as a whole.[25] According to the statement, Ms. Wilson must avoid concentrated exposure to extreme cold, extreme heat, high humidity, fumes, gases, odors, perfumes, soldering fluxes, solvents/cleaners, chemical, and sunlight,[26] but treatment notes provide no basis for such limitations. Treatment notes document no respiratory

---

[27]*Id.* at p. 400.

[28]*Id.* at p. 399.

[29]SSR 96-2p, *Pol'y Interpretation Ruling Titles II & XVI, Giving Controlling Weight to Treating Source Med. Opinions*.

[30]*Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995).

[31]20 C.F.R. § 404.1513 (listing sources who can provide medical evidence to establish impairment).

[25]SSA record at p. 20.

[26]*Id.* at p. 400.

issues.[27] The inconsistency between the reported limitations and treatment notes undermined the statement, and provided a proper basis for rejecting it.

The ALJ properly rejected the psychiatrist statement because: (1) the statement is inconsistent with the record, and (2) the treatment history was brief.[28] According to the statement, Ms. Wilson has no ability to work near others without being distracted, accept instructions from supervisors, or deal with typical work stress.[29] Yet she worked as a cashier at Dollar General for many months.[30] Working is inconsistent with the reported limitations. A treatment relationship is also doubtful because Ms. Wilson obtained her mental health medication from a primary care provider (PCP), not a mental health provider. The PCP treatment notes show medication controls her symptoms.[31] Symptoms controlled by medication are not disabling. So, the ALJ had a sufficient basis for rejecting the statement.

---

[27] *Id*. at pp. 376, 379, 382, 385, 388 & 397.

[28] *Id*. at p. 21.

[29] *Id*. at p. 399.

[30] *Id*. at pp. 36-39 (testifying on Jan. 23, 2015, that she started working at Dollar General on Aug, 1, 2014, and quit on Dec. 26, 2014) & p. 290 (reporting on Dec. 16, 2014, that she started working at Dollar General in May 2012).

[31] *Id*. at p. 301 (Mar. 26, 2013, doing well on Prozac, she is less irritable, having less depression), p. 322 (Sept. 11, 2013, taking anti-depressant with some benefit), p. 384 (Aug. 28, 2014, depression is better with Brintellix), p. 388 (Oct. 6, 2014, she described Brintellix as a miracle drug, she is feeling so much better) & p. 396 (Dec. 19, 2014, Brintellix is helping, she doesn't have as much overwhelming sadness).

**3. Vocational evidence supports the decision**. The ALJ questioned a vocational expert whether a person with Ms. Wilson's limitations can do past work.[32] According to a vocational expert, Ms. Wilson can do her past work as a cook's helper. A claimant who can do her past work is not disabled under social security law.[33]

## Conclusion

A reasonable mind will accept the evidence as adequate to support the determination that Ms. Wilson can do her former work. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the Commissioner's decision and DISMISSING Plaintiff's Complaint with prejudice.

Dated this 29th day of February, 2016.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[32]*Id*. at p. 58.

[33]20 C.F.R. § 404.1520(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").